UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.:

LOLA DOE,

      Plaintiff,

vs.

DARREN K. INDYKE AND
RICHARD D. KAHN AS
CO-EXECUTORS OF THE ESTATE
OF JEFFREY E. EPSTEIN

      Defendant.
_____/

## COMPLAINT

Plaintiff, LOLA DOE, by and through her undersigned counsel, for her claims against Defendants, alleges as follows:

1. The controversy in this cause of action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Therefore, jurisdiction is proper under 28 U.S.C. section 1332.

2. Plaintiff files this Complaint under a pseudonym in order to protect her identity because this Complaint makes allegations of a sensitive sexual nature the disclosure of which, in association with her name, would cause further harm to her.

3.      Plaintiff is currently a resident of and domiciled in the state of New York.

4.      At all times material to this cause of action, Jeffrey Epstein travelled between and stayed regularly in multiple residences, including in New York, New York (within the Southern District of New York) and the United States Virgin Islands.  He was a citizen of the United States and a resident of the U.S. Virgin Islands.

5.      At all times material to this cause of action Jeffrey Epstein was an adult male born in 1953, who died on August 10, 2019.

6.      Defendant, Darren K. Indyke and Richard D. Kahn as Co-Executors of the Estate of Jeffrey E. Epstein ("Estate of Jeffrey E. Epstein"). The Estate of Jeffrey E. Epstein was opened and domiciled in the United States Virgin Islands, St. Thomas Division, and is the legal entity responsible for intentional, criminal, or tortious conduct committed by Jeffrey Epstein as described in this Complaint.

7.      A substantial part of the acts, events, and omissions giving rise to this cause of action occurred in the Southern District of New York; venue is proper in this District.  28 U.S.C. section 1391(b)(2).

8.      At all times material to this cause of action, Jeffrey Epstein owed a duty to Plaintiff to treat her in a non-negligent manner and not to commit, or conspire to commit, or cause to be committed intentional, criminal, fraudulent, or tortious acts

against Plaintiff, including any acts that would cause Plaintiff to be harmed through conduct committed against her in violation of New York Penal Law section 214-G, New York Penal Law section 130.20; or New York Penal Law 130.35; or New York Penal Law 130.52; or New York Penal Law 130.66; or New York Penal Law 130.67.

## FACTUAL ALLEGATIONS

9. At all times material to this cause of action, Jeffrey Epstein was an adult male over 45 years old. Epstein was tremendously wealthy, widely recognized as a billionaire, who used his wealth, power, resources, and connections to commit illegal sexual crimes in violation of federal and state statutes and to employ and conspire with other individuals and corporate entities to assist him in committing those crimes or torts or to facilitate or enable those acts to occur.

10. Epstein displayed his enormous wealth, power, and influence to his employees, to the victims procured for sexual purposes, and to the public, in order to advance and carry out and conceal his crimes and torts.

11. At all relevant times, Epstein had access to numerous mansions, a fleet of airplanes, motor vehicles, boats and one or more helicopters. For example, he regularly traveled by private jet aboard a Boeing aircraft (of make and model B-727-31H with tail number N908JE) or a Gulfstream aircraft (of make and model G-1159B with tail number N909JE).

12.     Jeffrey Epstein also travelled between and frequently inhabited and travelled between numerous properties and homes, including a Manhattan townhome located at 9 East 71st Street, New York, NY 10021 valued conservatively by Jeffrey Epstein's own admission at $55,931,000.00; a ranch located at 49 Zorro Ranch Road, Stanley, New Mexico 87056 valued conservatively by Jeffrey Epstein's own admission at $17,246,208.00; a home located at 358 El Brillo Way, Palm Beach, Florida 33480 valued conservatively by Jeffrey Epstein's own admission at $12,380,209.00; an apartment located at 22 Avenue Foch, Paris, France 75116 valued conservatively by Jeffrey Epstein's own admission at $8,672,820.00; an Island located at Great St. James Island No. 6A USVI 00802 (parcels A, B, C); and an Island Little St. James Island No. 6B USVI 00802 (A, B, C).  *See* Jeffrey Epstein "Asset Summary – June 30, 2019" filed in Case 1:19-cr-00490-RMB on July 15, 2019.

13.     The allegations herein primarily concern Jeffrey Epstein's conduct while at his townhouse in New York.

14.     Epstein had a compulsive sexual preference for females as young as 14 years old.

15.     Epstein enjoyed sexual contact with young females, including minor children, and took pleasure corrupting vulnerable young females, including minor children, into engaging in sexual acts with him.

16. Epstein directed a complex system of individuals to work in concert and at his direction for the purpose of harming teenage girls through sexual exploitation.

17. It was widely known among individuals regularly in Epstein's presence that he got pleasure out of corrupting vulnerable young females into engaging in uncomfortable and unwanted sexual acts for his own gratification.

18. On July 2, 2019, the United States Attorney's Office for the Southern District of New York filed a Sealed Two Count Indictment inclusive of One Count of Sex Trafficking Conspiracy and One Count of Sex Trafficking, in part due to Epstein's criminal activities against children in the New York Mansion located at 9 East 71st Street.

19. On July 8, 2019, Jeffrey Epstein was arrested pursuant to the aforementioned Indictment.

20. The Indictment stated in part, and Plaintiff herein adopts as true, that "from at least in or about 2002, up to and including at least in or about 2005, Jeffrey Epstein, the defendant, enticed and recruited, and caused to be enticed and recruited, minor girls to visit his mansion in Manhattan, New York (the "New York Residence") and his estate in Palm Beach, Florida (the "Palm Beach Residence") to engage in sex acts with him, after which the victims were given hundreds of dollars in cash." Criminal Indictment at 1.

21. "Moreover, and in order to maintain and increase his supply of victims, Epstein also paid certain of his victims to recruit additional girls to be similarly abused by EPSTEIN. In this way, EPSTEIN created a vast network of underage victims for him to sexually exploit in locations including New York and Palm Beach." Criminal Indictment at 1-2.

22. "The victims described herein were as young as 14 years old at the time they were abused by Jeffrey Epstein, and were, for various reasons, often particularly vulnerable to exploitation. Epstein intentionally sought out minors and knew that many of his victims were in fact under the age of 18, including because, in some instances, minor victims expressly told him their age." Criminal Indictment at 2.

23. "In creating and maintaining this network of minor victims in multiple states to sexually abuse and exploit, JEFFREY EPSTEIN, … worked and conspired with others, including employees and associates who facilitated his conduct by, among other things, contacting victims and scheduling their sexual encounters with EPSTEIN at the New York Residence and at the Palm Beach Residence." Criminal Indictment at 2.

24. The indictment further explained, and Plaintiff adopts and alleges, that, "[v]ictims were initially recruited to provide 'massages' to Epstein, which would be performed nude or partially nude, would become increasingly sexual in nature, and would typically include one or more sex acts." Criminal Indictment at 3.

25. "Between at least in or about 2002 and in or about 2005, Epstein abused numerous minor victims at the New York Residence by causing these victims to be recruited to engage in paid sex acts with him." Criminal Indictment at 3.

26. Jeffrey Epstein's sexual attraction to young, often underage, females, dated back to at least the mid-nineties. He specifically targeted underprivileged, emotionally vulnerable and/or economically disadvantaged young females like Plaintiff to sexually molest and abuse.

## LOLA DOE

27. Minor victim, LOLA DOE, was subjected to the same types of illegal sexual acts detailed in the Criminal Indictment filed against Jeffrey Epstein by the Southern District of New York.

28. Jeffrey Epstein committed acts of sexual abuse against Plaintiff in 2002.

29. In or about 2002, Plaintiff visited Jeffrey Epstein's mansion in Manhattan, New York with her sister. Plaintiff did not know Jeffrey Epstein and had never been to his home before.

30. Upon arrival to the mansion, the two children were greeted by a woman and told to have a seat.

31. Moments later, Jeffrey Epstein appeared and introduced himself to Plaintiff. He then offered to take her on a tour of the house.

32. The tour led to the massage room where Plaintiff, a minor child, was sexually abused by Jeffrey Epstein.

33. During the sexual encounter, Plaintiff told Epstein that she did not feel comfortable. Jeffrey Epstein ignored her and continued to engage in the improper and illegal sexual contact.

34. Plaintiff continued to tell Epstein that she did not want to do it, but he refused to stop, continuing to sexually assault her in every way imaginable.

35. The sexual encounter ended when Jeffrey Epstein masturbated to climax.

36. Plaintiff was paid $300 cash before rushed out of the mansion in a panic. The payment was made to induce Plaintiff to conceal the activities of Epstein and to entice her to return.

37. Plaintiff was given a tour, which allowed her to intrinsically observed the opulence of the mansion owned by Defendant, culminating in New York Penal Law Section 130 crimes being committed against her by Jeffrey Epstein.

38. Throughout the duration of the sexual encounter, Plaintiff found herself trapped in Jeffrey Epstein's large mansion under the impression that there was no feasible or safe means of escape.

39. All sexual acts were performed by Jeffrey Epstein intentionally, for no legitimate purpose, and for his own gratification when Plaintiff was a minor child.

40. The intentional acts of Jeffrey Epstein against Plaintiff constitute sexual offenses as defined in New York Penal Law § 130.

41. Jeffrey Epstein committed sexual misconduct against Plaintiff as defined in §130.20 of the New York Penal Law, inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff without Plaintiff's consent.

42. Jeffrey Epstein committed rape in the first degree as defined in §130.35 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff by forcible compulsion.

43. Jeffrey Epstein committed a criminal sexual act in the first degree against Plaintiff as defined in §130.50 of the New York Penal Law, inasmuch as Jeffrey Epstein, engaged in oral sexual conduct with Plaintiff by forcible compulsion.

44. Jeffrey Epstein committed a forcible touching against Plaintiff as defined in §130.52 of the New York Penal Law, inasmuch as Jeffrey Epstein, intentionally and for no legitimate purpose, engaged the forcible sexual touching of Plaintiff for the purpose of degrading or abusing her or for the purpose of gratifying his sexual desire.

45. Jeffrey Epstein committed sexual abuse in the first degree against Plaintiff as defined in §130.65 of the New York Penal Law, inasmuch as Jeffrey Epstein subjected Plaintiff to sexual contact by forcible compulsion.

46. Jeffrey Epstein committed an aggravated sexual abuse in the second degree against her as defined in §130.67 of the New York Penal Law, inasmuch as Jeffrey Epstein inserted his fingers into the vagina of Plaintiff by forcible compulsion.

### COUNT I
### SEXUAL ASSAULT AGAINST DARREN K. INDYKE AND RICHARD D. KAHN AS CO-EXECUTORS OF THE ESTATE OF JEFFREY E. EPSTEIN

47. The Plaintiff adopts and realleges paragraphs 1 through 46 above.

48. Jeffrey Epstein made violent sexual demands on Plaintiff while dominantly positioning himself over her as a means to control her while touching her body in harmful ways as she resisted him.

49. Plaintiff was placed in apprehension of harm as a result of the demands made and actions taken by Epstein.

50. As a direct and proximate result of Jeffrey Epstein's battery, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses.  These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

51. This cause of action is timely under the Child Victims Act, New York Penal Law § 214-g because it arises out of sexual conduct perpetrated against Plaintiff when she was under the age of 18 years old.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, attorney's fees, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT II
## BATTERY/VIOLATION OF SECTION 130
## AGAINST DARREN K. INDYKE AND RICHARD D. KAHN AS CO-EXECUTORS OF THE ESTATE OF JEFFREY E. EPSTEIN

52. The Plaintiff adopts and realleges paragraphs 1 through 46 above.

53. The intentional acts of Jeffrey Epstein against Plaintiff constitute a sexual offense as defined in New York Penal Law § 130, including but not limited to the following:

   a. Sexual misconduct as defined in §130.20 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff without Plaintiff's consent;

   b. Rape in the first degree as defined in §130.35 inasmuch as Jeffrey Epstein engaged in sexual intercourse with Plaintiff by forcible compulsion;

   c. Criminal sexual act in the first degree as defined in §130.50 inasmuch as Jeffrey Epstein engaged in oral sexual conduct with Plaintiff by forcible compulsion.

   d. Forcible touching as defined in §130.52 inasmuch as Jeffrey Epstein, intentionally and for no legitimate purpose, engaged the forcible sexual

       touching of Plaintiff for the purpose of degrading or abusing her or for the purpose of gratifying his own sexual desire; and

    e. Sexual abuse in the first degree as defined in §130.65 inasmuch as Jeffrey Epstein subjected Plaintiff to sexual contact by forcible compulsion.

    f. Aggravated sexual abuse in the second degree as defined in §130.67 inasmuch as Jeffrey Epstein caused physical injury to Plaintiff when he inserted a finger into the vagina of Plaintiff by forcible compulsion.

54. As a direct and proximate result of Jeffrey Epstein's violations of New York Penal Law § 130, Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

55. This cause of action is timely under the Child Victims Act, New York Penal Law § 214-g because it arises out of sexual conduct perpetrated against Plaintiff when she was under the age of 18 years old.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, attorney's fees, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DARREN K. INDYKE AND RICHARD D. KAHN AS CO-EXECUTORS OF THE ESTATE OF JEFFREY E. EPSTEIN

56. The Plaintiff adopts and realleges paragraphs 1 through 46 above.

57. Jeffrey Epstein's sexual abuse of Plaintiff constitutes extreme and outrageous conduct that shocks the conscience.

58. Jeffrey Epstein's horrific abuse of Plaintiff inflicted severe pain and anguish upon her.

59. Jeffrey Epstein targeted Plaintiff and directed this conduct towards her knowing that it would cause her severe and permanent emotional distress.

60. Jeffrey Epstein's conduct did in fact cause Plaintiff severe and permanent emotional distress.

61. As a direct and proximate result of Jeffrey Epstein's actions, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages.  Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses.  These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

62. This cause of action is timely under the Child Victims Act, New York Penal Law § 214-g because it arises out of sexual conduct perpetrated against Plaintiff when she was under the age of 18 years old.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, attorney's fees, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

## COUNT IV
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DARREN K. INDYKE AND RICHARD D. KAHN AS CO-EXECUTORS OF THE ESTATE OF JEFFREY E. EPSTEIN

63. The Plaintiff adopts and realleges paragraphs 1 through 46 above.

64. Jeffrey Epstein brought Plaintiff into his home where he sexually assaulted her.

65. Jeffrey Epstein's sexual abuse of Plaintiff constitutes extreme and outrageous conduct that shocks the conscience.

66. Jeffrey Epstein breached a duty owed directly to Plaintiff by endangering her physical safety, causing severe pain and anguish, and causing her permanent emotional distress.

67. As a direct and proximate result of Jeffrey Epstein's actions, the Plaintiff has in the past suffered and in the future will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation,

14

embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses and Plaintiff will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

68. This cause of action is timely under the Child Victims Act, New York Penal Law § 214-g because it arises out of sexual conduct perpetrated against Plaintiff when she was under the age of 18 years old.

WHEREFORE, Plaintiff demands judgment against the Estate of Jeffrey E. Epstein for compensatory and general damages, attorney's fees, and such other and further relief as this Court deems just and proper. Plaintiff hereby demands trial by jury on all issues triable as of right by a jury.

Dated: April 30, 2021

Respectfully Submitted,
EDWARDS POTTINGER, LLC

By: *Bradley J. Edwards*
Bradley J. Edwards
Brittany N. Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email: brad@epllc.com
brittany@epllc.com
ecf@epllc.com, primary
(*SEEKING ADMISSION PRO HAC VICE*)

15